## Richmond

ERIC WENDELL HEMMING v. COMMONWEALTH OF VIRGINIA.

August 28, 1974.

Record No. 731042.

Present, All the Justices.

*Stanley E. Sacks (Sacks, Sacks & Tavss*, on brief), for plaintiff in error.

*Robert E. Shepherd, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

Per Curiam.

Defendant, Eric Wendell Hemming, was convicted by the trial court, sitting without a jury, of knowingly possessing heroin, a Schedule I controlled substance, in violation of Code § 54-524.101:2. The court fixed his punishment at three years in the penitentiary.

The only issue here is the sufficiency of the evidence to sustain the conviction.

The evidence, stated in the light most favorable to the Commonwealth, shows that a search warrant was issued at 8:50 p.m. on November 29, 1972, to search for marijuana at the trailer home of Patrick Harvey at 304 Detroiter Avenue in Virginia Beach. Around 9:00 p.m. Detectives S. B. Sciortino and J. B. Pritchard, who were preparing to conduct the search, observed the defendant leave Harvey's trailer and walk down the street. Sciortino recognized the defendant whom he knew to be on probation after conviction of a drug charge. At Sciortino's request, two other policemen intercepted the defendant and

detained him. Sciortino arrived a short time later and advised the defendant of his *Miranda* rights.

Sciortino questioned the defendant as to who was in the trailer. The defendant replied that Harvey was there. When asked if he had been in the trailer, the defendant responded that he had "just left there." When asked by the officer if there were narcotics in the trailer, the defendant did not answer.

Sciortino, Pritchard and two other policemen then entered the trailer. Hemming accompanied the police at their direction. They found Harvey alone in the trailer. Sciortino observed a "plastic baggie" containing marijuana on top of a table. Harvey was arrested for possession of marijuana and the search warrant was served on him.

The subsequent search of the trailer revealed other contraband, including two sets of "junkie works" which were concealed in a washing machine under the soiled laundry. Each set of "junkie works" was in a separate box. One of these boxes was black plastic and the other was cardboard. The contents of these boxes could not be observed until they were opened.

The two closed boxes were shown to Hemming who was asked if he had seen them before. Upon receiving an affirmative response, Detective Sciortino examined defendant's arms and observed six "needle tracks," three on each arm, which were "quite fresh" as they had not "scabbed over."

The defendant then told the police that he had made six attempts to "hit-up" with heroin but was unsuccessful because "he couldn't find the vein." When asked which "set of works" he used, the defendant pointed to the black plastic box which contained a plastic syringe, two needles and a bottle cap "cooker." Subsequent analysis showed that the "cooker" contained a white residue which responded positively to the qualitative tests for heroin. Laboratory tests of the syringe and needles showed no trace of heroin or any other controlled substance.

The defendant argues that this evidence is insufficient to show that he knowingly possessed heroin. In support of this argument he points to the evidence of Detective Pritchard that it was possible that the residue in the bottle cap "cooker" could have been there for "any length of time," for as long as a month or a year. He also argues that the absence of heroin in the syringe and needles indicates that the defendant was "ripped off" and

that the substance which he attempted to inject in his veins on November 29, 1972, was not, in fact, heroin. The defendant also points to his testimony at trial denying ownership of the "junkie works" and denying that he prepared the shot which he unsuccessfully attempted to inject.

These arguments go to the weight of the evidence rather than to its sufficiency.

The evidence shows that a "cooker" is necessary to prepare heroin for intravenous injection and is an integral part of the "junkie works" for using heroin in this fashion. It also shows that the defendant intended to possess heroin and to inject it intravenously. He admitted to the officers that he had used the "junkie works" in the black plastic case, which included the "cooker". This establishes that he did, in fact, possess heroin on the date charged.

We conclude, therefore, that the evidence was sufficient to sustain the conviction and it is affirmed.

*Affirmed.*